OPINION
 {¶ 1} Defendant-appellant, Jermaine A. Hall ("appellant"), appeals his convictions for the offenses of felonious assault and weapon under disability and the corresponding firearm specifications. Appellant was sentenced and this appeal followed. For reasons set forth below, we affirm.
 {¶ 2} Appellant was indicted on one count of attempted murder in violation of R.C. 2923.02, a felony of the first degree; one count of felonious assault in violation of R.C. 2903.11, a felony of the second degree; one count of kidnapping in violation of R.C. 2905.01, a felony of the first degree; one count of carrying a concealed weapon in violation of R.C. 2923.12, a felony of the fourth degree and one count of having a weapon under disability, a violation of R.C. 2923.13, a felony of the third degree. Each offense was accompanied with a three-year firearm specification pursuant to R.C. 2941.145. Appellant was found guilty by jury verdict on the offenses of felonious assault and weapon under disability and their corresponding firearm specifications, and not guilty on the offense of kidnapping. The jury was unable to reach a verdict on the offenses of attempted murder and carrying a concealed weapon and a nolle prosequi was entered as to those offenses.
 {¶ 3} The following relevant facts were adduced at trial. On September 1, 2005, between 8:30 and 9:00 p.m., Victor L. Edwards ("Edwards"), was with his friend Jevon Turner ("Turner"), while having his hair braided at a residence on Wayne Avenue. Edwards and Turner saw appellant with some of his friends on the street. Edwards knew appellant from high school and testified that he was related to him, distantly, through marriage. Edwards testified that appellant called to him using his family nickname of "Boo." Edwards approached appellant and was asked about items taken from the home of Jason Murphy ("Murphy"), appellant's brother. Edwards denied taking the items.
 {¶ 4} According to Edwards, appellant stuck a silver .22 revolver in his mouth and said "I'll kill you" and proceeded to fire four shots at him. Edwards sustained a total of four gunshot wounds. Edwards and Turner ran to Edwards' house where Turner called 911 on Edwards' cell phone.
 {¶ 5} Edwards was treated at Mt. Carmel Hospital by Dr. Phillip Price. While at the hospital, Edwards was presented with a photo array by Detective Jacobs in which he was able to identify appellant as the individual who shot him.
{Para;6} Turner testified that he was friends with Edwards and knew appellant from high school. He testified that he and Edwards had worked together on September 1, 2005. After work they went to a location where Edwards had his hair braided. They came across appellant and some of his friends. When appellant called out to Edwards, Turner, who was aware of the allegations that Edwards had taken items from appellant's brother, told Edwards not to approach appellant. Despite this warning, Edwards did approach appellant and Turner accompanied him. Appellant accused Edwards of stealing his brother's PlayStation 2. When Edwards denied the allocation, appellant shot him in the mouth with a black revolver stating, "I'll kill you." Turner was pushed out of the way by Edwards and heard three more shots being fired. The two men ran to Edward's home where 911 was called.
 {¶ 7} Turner testified that he spoke to a responding officer, Sergeant Suber and escorted her to the scene of the shooting. Turner identified appellant through a photo array presented to him by Detective Jacobs.
 {¶ 8} Officer Donald Smith testified that he was dispatched to the area of Wicklow and Burgess Avenue in Columbus, Ohio, where he was flagged down by a woman identified as Edwards' mother. He then went to 330 South Burgess where he observed Edwards. While waiting with Edwards for the medics to arrive, Officer Smith asked him who shot him. Edwards replied, "Jermaine Hall."
 {¶ 9} Sergeant Laura Suber testified that she was dispatched to the area of Wicklow and Burgess Avenue on a shooting. There she observed a woman who was hysterical. Suber took the woman to 330 South Burgess where she found Edwards. Suber gathered information about the shooting from Turner and was taken by him to the area of Freemont and Wayne Avenue and secured the scene. No bullet casings, weapon, or physical evidence were found at the scene of the shooting.
 {¶ 10} The parties stipulated that appellant had been convicted of juvenile sexual battery in violation of R.C. 2907.03, and that such conviction, had it been committed by an adult, would have been a conviction for an offense of violence.
 {¶ 11} Appellant testified that on September 1, 2005, he was at the home of his best friend, Larry Fox ("Fox"). According to appellant, Fox's sister, baby, and the baby's mother were also present. Appellant testified that prior to September 1, 2005, he had undergone surgery and had stitches in his face. Appellant stated that after the surgery he was depressed and rarely left his home. He would leave his home only to go to Fox's residence. Appellant testified he was informed by his brother that people were accusing him of shooting Edwards.
 {¶ 12} Appellant testified that he could not recall what day of the week was September 1, 2005. He testified to suffering from an attention deficit disorder and to having bouts of memory loss and confusion about his criminal record and school history. He denied being present in the area of Wayne Avenue or shooting appellant on September 1, 2005. Appellant turned himself into police on September 19, 2005.
 {¶ 13} Appellant's brother, Murphy, testified that sometime around September 1, 2005, between 4:00 and 5:00 p.m., he called appellant's cell phone to talk with him about his disability check. Murphy testified appellant told him during that conversation that he was at Fox's home. A few days later, Murphy called appellant and told him that he and "another white guy" were being accused of shooting Edwards.
 {¶ 14} Fox testified that appellant was at his home on September 1, 2005, and had been there for several days. Fox testified that the only time appellant left on that date, was during daylight hours for approximately one hour. Fox testified that it was customary for he and appellant to go out on the first of every month after appellant had received his disability check.
 {¶ 15} Appellant advances the following assignment of error for our review:
 APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366,227 N.E.2d 212, paragraph one of the syllabus. The trier of fact is free to believe or disbelieve all or any of the testimony of any witness. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 17} Appellant contends that the verdicts are against the manifest weight because there was no physical evidence, weapon, or fingerprints discovered linking appellant to the shooting. Appellant asserts that this lack of evidence supports appellant's alibi that he was not present at the crime scene and did not shoot Edwards.
 {¶ 18} The eyewitness testimony of Turner and Edwards, if believed by the jury, supports the jury's finding that appellant committed the offense of felonious assault with a weapon and establishes each and every element of that offense. Each testified that appellant pointed a weapon at Edwards and shot him four times. Additionally, there was evidence before the jury that appellant was convicted of sexual battery as a juvenile and thus there was evidence of each and every element of the offense of having a weapon while under disability.
 {¶ 19} Although alibi evidence was presented to the jury regarding appellant's whereabouts at the time of the shooting, the jury is free to discount appellant's evidence. It is within the province of the jury to believe or disbelieve all or any part of a witnesses' testimony. The fact that a jury may not have found a particular witness or witnesses' testimony credible is not a basis for reversal on manifest weight grounds.
 {¶ 20} After careful review of all the evidence, we cannot say that the evidence weighs heavily against the convictions or that the jury clearly lost its way. Therefore, we do not find that appellant's convictions for felonious assault, weapon while under disability and corresponding gun specifications are against the manifest weight of the evidence.
 {¶ 21} For all the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
FRENCH and McGRATH, JJ., concur.